UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CASE NUMBER:  6:22-cv-2172

RAZVAN RUSOVICI,

      Plaintiff,

vs.

UNIVERSITY OF CENTRAL FLORIDA,
through its Board of Trustees;
MIKE BELLEW
(in his official and individual capacity);
BASMA SELIM
(in her official and individual capacity);
 JONATHAN KIBBLE
(in his official and individual capacity);
MARCY VERDUIN
(in his official and individual capacity);
DOE DEFENDANTS 1-20
(in their official and individual capacity);

      Defendants.

_____/

**DEFENDANTS, UNIVERSITY OF CENTRAL FLORIDA'S, THROUGH ITS BOARD OF TRUSTEES, BASMA SELIM'S, JONATHAN KIBBLE'S, AND MARCY VERDUIN'S, MOTION TO DISMISS AND SUPPORTING MEMORANDUM OF LAW**

Defendants University of Central Florida through its Board of Trustees

("UCF")[1], Basma Selim ("Selim"), Jonathan Kibble ("Kibble"), and Marcy

_____

[1] In this Motion, UCF uses the name listed by Defendant in his Complaint. The proper party is The University of Central Florida Board of Trustees. Fla. Stat. § 1001.72.

Verduin ("Verduin"), pursuant to *Federal Rule of Civil Procedure* 12(b)(6) respectfully request this Honorable Court to dismiss Plaintiff's Complaint, and in support state[2]:

## I.    Plaintiff's Alleged Facts

Defendant UCF is a public university located in Orlando, Florida. (Cx. ¶ 3)[3] Plaintiff, Razvan Rusovici, is a former student of UCF's College of Medicine. (Cx. ¶ 2) On January 27, 2020, Plaintiff took an exam (the "Exam") using ExamSoft assessment software. (Cx. ¶ 17) During the test, Plaintiff appeared jumpy and unfocused. (Cx. ¶ 24) Plaintiff looked at other students when they made noise. *Id*. Plaintiff also has "dry eyes" which make him move his eyes around more often than other students. (Cx. ¶ 25) In addition, the ExamSoft system recorded Plaintiff as having spent time on the same question as the student in front of him thirty-five (35) times during the exam. (Cx. ¶¶ 27-28)

Plaintiff alleges that Defendants Bellew and Selim were the proctors for the Exam and, after the Exam, having observed his admitted behavior, accused him of possible misconduct. (Cx. ¶ 22) After the Exam, UCF compared the ExamSoft

---

[2] Defendant Mike Bellew has not been served with process nor has counsel accepted service on his behalf. As a courtesy, UCF informed Plaintiff that Mike Bellew was not involved with proctoring Plaintiff's exam but that a different individual with the last name of Bellew was a Proctor. Defendant, however, elected not to file an Amended Complaint. As unidentified individuals against whom no specific allegations have been made, the undersigned also does not currently represent and is not responding on behalf of the Doe defendants.

[3] Plaintiff's Complaint will be cited to herein as (Cx. ¶ __).

results to the results of five (5) other students. (Cx. ¶ 30) After doing so, UCF's Associate Dean of Students, Defendant Kibble, informed Plaintiff of a "possible honor violation" based on his observed conduct and the ExamSoft results. (Cx. ¶ 32)

On February 21, 2020, an "initial hearing" was held by the Student Professional Conduct Council ("SPCC") consisting of Associate Dean Kibble and three other individuals Plaintiff did not name as defendants in this action. (Cx. ¶ 33) After the hearing, Plaintiff was informed that a formal hearing would be held on March 6, 2020. (Cx. ¶ 39) Plaintiff was provided the ExamSoft data regarding his Exam on March 2, 2020, four days before the scheduled hearing. (Cx. ¶ 40) At Plaintiff's request, however, Defendant extended the hearing date so that he had sufficient time to review the ExamSoft data. (Cx. ¶ 42)

Prior to the newly scheduled hearing Plaintiff voluntarily withdrew from UCF. (Cx. ¶ 48)

## II.      Legal Standard for a Motion to Dismiss.

Federal Rule of Civil Procedure 12(b)(6) allows a complaint to be dismissed for failure to state a claim upon which relief can be granted. *See Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007). "A plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl.*

*Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955 (2007) (quotation and internal alterations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* Mere conclusory statements in support of a threadbare recital of the elements of a cause of action do not suffice. *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009); *also see Davila v. Delta Air Lines, Inc.* 326 F.3d 1183, 1185 (11th Cir. 2003) ("conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal").

### III.    Plaintiff's Complaint Should be Dismissed as a "Shotgun Pleading"

As an initial matter, Plaintiff's Amended Complaint is an impermissible shotgun pleading and must be dismissed on that basis. There are several examples that highlight the deficiencies of the Complaint—*e.g.*, each cause of action is inherently vague in terms of which defendants it specifically applies to, it is unreasonably difficult to ascertain which causes of action apply to which defendants, and specifically on what basis, and there are a number of factual statements that are wholly irrelevant to Plaintiff's claims. Plaintiff alleges that he does not know when individual defendants were acting within the scope of their official duties and when, if ever, they were acting outside their official responsibilities. (Cx. ¶¶ 53-54) With respect to the "Doe" defendants, Plaintiff fails to make any allegations of specific conduct whatsoever.

In addition, "[t]he distinction between an individual capacity suit . . . and an official capacity suit is a significant one." *Smith v. Allen*, 502 F.3d 1255, 1271 (11th Cir. 2007), abrogated on other grounds by *Sossamon v. Texas*, 563 U.S. 277, 287 (2011). A defendant sued in its individual capacity "may . . . be able to assert . . . qualified immunity," whereas a defendant sued in its official capacity may only claim "forms of sovereign immunity that the entity, *qua* entity, may possess, such as the Eleventh Amendment." *Id.* at 1271-72 (citations omitted). A complaint that does not specify whether a defendant is sued in their individual or official capacities, or both, is a deficient shotgun pleading. *Thorn v. Randall*, No. 8:14-cv-862-T-36MAP, 2014 WL 5094134, at *2 (M.D. Fla. Oct. 24, 2014). When faced with a shotgun pleading, the appropriate action by a trial court is dismissal of the claim. *United States ex rel. Atkins v. McInteer*, 470 F.3d 1350, 1354 n.6 (11th Cir. 2006); *also see McLaughlin v. Florida International University Board of Trustees*, 533 F.Supp.3d 1149 (S. Dist. Fla. 2021). Accordingly, Plaintiff's Complaint should be dismissed in its entirety. For the reasons set forth below, the dismissal should be with prejudice at least as to Counts I and II.

## IV.   Count I Fails to State a Claim Against UCF and the Individual Defendants in their Official Capacities under 42 U.S.C § 1983.

In Count I of the Complaint, Plaintiff purports to bring a claim against all Defendants for violation of 42 U.S.C § 1983. "[I]n the absence of consent, a suit in which the State or one of its agencies or departments is named as the defendant is

proscribed by the Eleventh Amendment. This jurisdictional bar applies regardless of the nature of the relief sought[,]" whether under federal or state law. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *also see Scott v. Taylor*, 405 F.3d 1251, 1255 (11th Cir. 2005). This immunity is an absolute bar on all "suits by private parties seeking to impose a liability which must be paid from public funds in the state treasury." *Harden v. Adams*, 760 F.2d 1158, 1163 (11th Cir. 1985). UCF is an established arm of the State. *See Hillemann v. Univ. of Cent. Fla.,* 167 F. App'x. 747, 748 (11th Cir. 2006)  and the immunity applies to the State and its officials acting in their official capacities. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989); *see also Carr v. City of Florence, Ala.,* 916 F.2d 1521, 1524 (11th Cir.1990).

The Supreme Court has only "recognized three situations in which there is a 'surrender' of Eleventh Amendment sovereign immunity: (1) when a state waives its Eleventh Amendment sovereign immunity and consents to suit in federal court, (2) when Congress, acting pursuant to § 5 of the Fourteenth Amendment, abrogates a state's Eleventh Amendment sovereign immunity by expressing an unequivocal intent to do so, and (3) when a state official is sued for prospective injunctive relief to end a continuing violation of federal law." *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1278 (11th Cir. 1998). None of these situations applies to Plaintiff's claim. First, the State of Florida has not waived its Eleventh Amendment immunity but, in

fact, has expressly retained it. *See* Fla. Stat. § 768.28(18); *Louisius v. Fla. Dept. Corr.,* 2015 WL 667973 at *5 (M.D. Fla. Feb. 17, 2015). Second, Congress has not abrogated Florida's Eleventh Amendment immunity, and "it is clear that § 1983 has not done so." *Camm v. Scott*, 834 F. Supp. 2d 1342, 1347 (M.D. Fla. 2011); *see also*, *Williams v. Bd. of Regents of Univ. Sys*., 441 F.3d 1287, 1303 (11th Cir. 2006). Third, Plaintiff does not seek prospective relief. Even if he did, state agencies "are never subject to unconsented suit, even under the doctrine of *Ex parte Young* [which] applies only when state officials are sued for prospective relief in their official capacity. It does not permit suit against state agencies or the state itself, even when the relief is prospective." *Eubank v. Leslie*, 210 Fed. Appx. 837, 844 (11th Cir. 2006).

Count I against UCF is also subject to dismissal because UCF does not qualify as a "person" under 42 U.S.C. §1983. In order to prevail in a § 1983 claim, the conduct complained of must have been committed by a person acting under color of state law. *Whitehorn v. Harrelson*, 758 F.2d 1416, 1419-1420 (11th Cir. 1985). A state and its agencies are not "persons" within the meaning of § 1983. *Edwards v. Wallace Cmty. Coll.*, 49 F.3d 1517, 1524 (11th Cir. 1995). Based on UCF's and the individual defendants' Eleventh Amendment immunity and the fact that UCF is not a "person" Count I of Plaintiff's Complaint should be

dismissed with prejudice as to UCF and the individual defendants in their official capacities.

## V. Count I Fails to State a Valid Due Process Claim Against the Individual Defendants in their Individual Capacities.[4]

### a. Plaintiff Fails to Sufficiently Allege Any Action Taken by Any Person in Their Individual Capacity.

As noted in Section III above, Plaintiff fails to describe any action allegedly taken by any defendant in their individual capacity. The only remotely relevant allegation is that "[s]ome of [the individual Defendants'] acts were undertaken within the scope of their employment with UCF." (Cx. ¶ 53) (emphasis added). This threadbare allegation fails under the requirements of 12(b)(6) and so Count I as to the individual defendants acting in their individual capacities should be dismissed. *Davila v. Delta Air Lines, Inc.* 326 F.3d 1183, 1185 (11th Cir. 2003). As set forth below, such dismissal should be with prejudice.

### b. Plaintiff Does Not Allege a Substantive Due Process Claim Against the Individual Defendants.

At a minimum, in order to prevail on his claim, against the individual Defendants, contending that he was deprived of a constitutionally-protected property or liberty interest, Plaintiff must prove, "(1) the existence of a protected

---

[4] As argued in Section VI below, the Complaint fails to allege that any of the individual defendants knew of Plaintiff's national origin. For that reason alone, Counts I and II are subject to dismissal. For the reasons set forth in in Sections V and VI the dismissal should be with prejudice.

property or liberty interest; and (2) arbitrary and capricious conduct on the part of state officials by showing that there was no rational basis for their decision or that the decision was motivated by bad faith or ill will unrelated to academic performance." *Schuler v. Univ. of Minn.,* 788 F.2d 510, 515 (8th Cir.1986); *see also Regents of Univ. of Mich. v. Ewing,* 474 U.S. 214, 223, 106 S.Ct. 507, 88 L.Ed.2d 523 (1985); *Hamil v. Vertrees,* No. 98-D-508-N, 2001 WL 135716, at *7 (M.D. Ala. Jan.10, 2001).

Based on defense counsel's research, while, on occasion they have assumed it for the sake of argument, the United States Supreme Court, the Eleventh Circuit and the Florida Supreme Court have never concluded that a protected property interest exists in a student's post-secondary education at a public college. *See e.g. Wright v. Chattahoochee Valley Cmty. College*, No.: 3:06-cv-1087-WKW, 2008 WL 4877948, at *4 (M.D. Ala. Nov. 12, 2008). Accordingly, Plaintiff's Complaint fails to allege a recognized protected property or liberty interest.

Even assuming arguendo that Plaintiff could meet the first element of a substantive due process claim and that the individual defendants were not entitled to qualified immunity[5], the Complaint clearly fails to allege that the individual

---

[5] While Plaintiff fails to allege a substantive due process claim, it is noted that he also could not defeat a claim of qualified immunity because he cannot point to any decision of the United States Supreme Court or the Eleventh Circuit Court of Appeals, "decided before the events at issue, that

Defendants acted in an arbitrary and capricious manner, that there was no rational basis for their actions, or that any of them were motivated by malice or ill-will. In *Ewing,* the Supreme Court explained the "arbitrary and capricious" standard and the requisite deference for academic decisions as follows:

> When judges are asked to review the substance of a genuinely academic decision, ... they should show great respect for the faculty's professional judgment. Plainly, they may not override it unless it is such a substantial departure from accepted academic norms as to demonstrate that the person or committee responsible did not actually exercise professional judgment. *Ewing*, 474 U.S. 214 at 223.

Merely alleging a "possibility the defendant acted unlawfully is insufficient to survive a motion to dismiss," *Sinaltrainal v. Coca-Cola Co*., 578 F.3d 1252, 1261 (11th Cir. 2009) (*citing Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)), and federal courts may infer "obvious alternative explanation[s]" from a complaint's factual allegations "that suggest lawful conduct rather than an inference of unlawful conduct." *Am. Dental Ass'n v. Cigna Corp*., 605 F.3d 1283, 1290 (11th Cir. 2010).

Plaintiff makes several allegations in Paragraph 62 of the Complaint that warrant little, if any consideration. For example, Plaintiff makes the claim that ExamSoft is an unreliable and arbitrary assessment software. Not only is this a legal conclusion with no alleged factual support but Plaintiff does not allege that any of the individual defendants had any responsibility in choosing to use

---

establishes a constitutional violation on 'materially similar' facts." *Hamil*, 2001 WL 135716, at *27.

ExamSoft during UCF exams or in administering it during Plaintiff's Exam. Plaintiff also alleges that the ExamSoft data was provided to him in an unusable format but then contradicts himself by referencing statistics and other information he obtained from his review of the data provided. (Cx. ¶ 44) Most importantly, Plaintiff's allegations are not evidence that UCF's procedures, which applied to all medical school students, were discriminatory, arbitrary, or unfair. Instead, they are simply arguments that Plaintiff might have used in the Honor Hearing to explain and counter the perception that he cheated.

Reviewing the allegations made against specific, individual Defendants, Plaintiff alleges that Defendants Bellew and Selim were the assigned Proctors for the Exam. (Cx. ¶ 22) He does not allege any fact from which it might be concluded that their report of him for possible academic misconduct was a "substantial departure from academic norms" as required by the Supreme Court in *Ewing,* cited above. Instead, in alleging that, during the exam, he was jumpy and unfocused at times, his eyes often moved around, and he looked in the direction of other students (and their computers), Plaintiff explains why Defendants Bellew and Selim had a reasonable belief that he may have engaged in academic misconduct during the Exam.

Plaintiff's only allegation regarding Defendant Kibble is that he was a member of the Student Professional Conduct Council (the "SPCC") which

conducted the initial investigation (referred to as an "initial hearing" by Plaintiff) of Plaintiff's possible honor code violation and scheduled the Honor Hearing. He does not claim that Defendant Kibble acted inappropriately in any way.

Plaintiff's only allegation against Defendant Verduin is that, after the "initial hearing" she denied his request for another informal hearing before the scheduled Honor Hearing. He does not allege that Ms. Verduin had any role in the ongoing disciplinary proceedings or even that she had the authority to provide him with an informal hearing. In fact, Plaintiff did not have a right to an informal hearing. In claiming such a right, Plaintiff refers to Section 3.1.4.2 of the UCF College of Medicine's MD Program Honor Code, a copy of which is attached hereto as Exhibit "A."[6] Section 3.1.4.2 does not provide students with a right to request an informal hearing but states that, after an informal investigation of an allegation of academic misconduct (which Plaintiff refers to as an "initial hearing"), one option for the SPCC is to informally resolve the charge of academic misconduct. In Plaintiff's case, after the informal investigation in which Plaintiff participated (Cx. ¶ 33), the SPCC, following Honor Code procedures instead elected to schedule an Honor Hearing at which all evidence could be reviewed and presented before a determination was reached as to whether Plaintiff engaged in academic

---

[6] When a Plaintiff fails to include a document on which a claim is based with his Complaint, Defendant may attach a copy to its Motion to Dismiss. *Bryant v. Avado Brands, inc.,* 187 F.3d 1271, 1280, n. 16 (11th Circuit 1999).

misconduct. As noted above, the facts alleged by Plaintiff regarding his actions during the Exam, the information provided by ExamSoft, and the excuses Plaintiff provided during the informal investigation fully justified the SPCC's choice.

Based on the facts and law set forth above, Plaintiff fails to and cannot allege a claim of substantive due process.

### c. Plaintiff Does Not and Cannot Allege a Claim of Procedural Due Process.

An "individual does not have a cognizable claim for a procedural due process violation unless and until the State fails to provide due process. Only when the state refuses to provide process sufficient to remedy the procedural deprivation does a constitutional violation actionable under section 1983 arise." *Wilhelm v. Fla. A&M Univ. College of Law*, Case No. 6:07-CV-281-Orl-19KRS, 2007 WL 1482022, *2 (M.D. Fla. Mar. 7, 2007) (*citing McKinney v. Pate*, 20 F.3d 1550, 1557 (11th Cir. 1994)).

All due process requires, in connection with the possible discipline of a student, "[is] that the student be given oral or written notice of the charges against him and, if he denies them, an explanation of the evidence the authorities have and an opportunity to present his side of the story." *Univ. of Missouri v. Horowitz*, 435 U.S. 78, 85 (1978). This standard is satisfied by a mere "'informal give-and-take' between the student and the administrative body dismissing him that would, at least, give the student the opportunity to characterize his conduct and put it in what

he deems the proper context," for the "very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation." *Id.*

In this case, UCF provided Plaintiff with due process. Plaintiff received notice of the claim of academic misconduct against him and participated in the informal investigation. During that meeting, the parties discussed and he was permitted to try to explain his behavior during the Exam. (Cx. ¶¶ 33 – 37).

Via the informal investigation, Plaintiff was provided due process and UCF then could have made a final decision as to whether and what disciplinary action should be taken. Instead, UCF, through its SPCC, provided another level of due process to Plaintiff in the form of the scheduled Honor Hearing. Pursuant to UCF's policies, before the Honor Hearing was to be held, Plaintiff was provided a copy of the ExamSoft data. He was also granted an extension of time to have a third-party examine such data. (Cx. ¶¶ 40, 42). Plaintiff, however, chose not to avail himself of the available additional due process and withdrew from school before the Honor Hearing.

Plaintiff's claim fails not only because he received due process from UCF but also because he failed to exhaust his remedies by withdrawing from school before his scheduled Honor Hearing took place. *See Doe V. Univ. of S. Fla. Bd. of Trs.*, No. 8:15-cv-682-T-30EAJ, 2015 WL 3453753, at *3 (M.D. Fla. May 29,

2015) (dismissing procedural due process claim because the plaintiff did not "allege that he sought an appeal" of defendant's adverse disciplinary decision); *Sarver v. Jackson*, 344 F. App'x 526 (11th Cir. 2009); and *McKinney v. Pate*, 20 F.3d 1550, 1557 (11th Cir. 1994). Plaintiff's alleged injury was caused not by UCF or its employees but by his own act of withdrawing from school thereby terminating the due process procedures provided to him by the school. Plaintiff cannot claim a procedural deprivation when he failed to take advantage of the available review process.

In addition, Plaintiff failed to seek sufficient and available state court relief, such as by filing a petition for certiorari review with the Circuit Court in and for Orange County, Florida. *See Fla. R. App. P.* 9.100(c) and 9.190(b) (3) (providing for certiorari review of quasi-judicial actions of state agencies, boards and commissions). Hence, there is "no federal procedural due process violation regardless of whether [he] has taken advantage of the state remedy or attempted to do so." *Id.* (*citing Horton v. Bd. of Cnty. Comm'rs of Flagler Cnty.*, 202 F. 3d 1297, 1300 (11th Cir. 2000) and *Watts v. Fl. Int'l Univ.*, Case No. 02-60199-CIV, 2005 WL 3730879 at * 6-7 (S.D. Fla. June 9, 2005) (collecting cases) (*aff'd in part, vacated in part, Watts v. Florida Int'l. Univ.*, 495 F.3d 1289 (11th Cir. 2007).

Because Plaintiff's Complaint shows that UCF and the individual defendants provided him with substantive and procedural due process, Plaintiff cannot state a

claim under 42 U.S.C. § 1983 and Count I of the Complaint should be dismissed with prejudice.

## VI.    Count II Fails to Allege a Justiciable Claim under Title IV.

Under Title VI of the Civil Rights Act of 1964, "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. It is firmly established that only public and private entities can be held liable under Title VI. *Price ex rel. Price v. La. Dep't of Educ*., 329 F. App'x 559, 561 (5th Cir. 2009) *citing Shotz v. City of Plantation,* 344 F.3d 1161, 1171 (11th Cir.2003) ("It is beyond question ... that individuals are not liable under Title VI."); *see also United States v. Baylor Univ. Med. Ctr.,* 736 F.2d 1039, 1044 n. 9 (5th Cir.1984). Accordingly, Count II of the Complaint should be dismissed with prejudice as to the individual defendants.

As to UCF, it is well-settled that Title VI prohibits only intentional discrimination. Proof of disparate impact is not sufficient. *Alexander v. Sandoval*, 532 U.S. 275, 280-281 (2001); *Mumid v. Abraham Lincoln High Sch.*, 618 F.3d 789, 794 (8th Cir. 2010), cert. denied, 131 S. Ct. 1478 (2011). Count II of Plaintiff's Complaint clearly pleads that the "the implementation of UCF's policies

has a <u>disparate impact</u> on minority students at UCF." (Cx. ¶ 72) (emphasis added).
Accordingly, Count II also should be dismissed with prejudice as to UCF.

Even if the Court ignores the fact that Count II of the Complaint is
specifically pled as a disparate impact claim, the claim still fails. To state a cause
of action under Title VI against UCF, Plaintiff must allege that UCF discriminated
against him because of his national origin, the discrimination was intentional, and
the discrimination was a "substantial" or "motivating factor" for UCF's actions. *See
Tolbert v. Queens Coll*., 242 F.3d 58, 69 (2d Cir. 2001); and *Alexander v.
Sandoval*, 532 U.S. 275, 280 (2001). Plaintiff's subjective beliefs do not create an
inference of intentional discrimination. *See, e.g., Byers v. Dallas Morning News,
Inc*., 209 F.3d 419, 427 (5th Cir. 2000). Rather, for Plaintiff's Title VI claim to
survive a Motion to Dismiss, the facts alleged in the Complaint must allow the
Court to reasonably infer that his national origin was a substantial or motivating
factor for UCF's actions. *See Ricci v. DeStefano*, 557 U.S. 557, 577 (2009). They
do not.

Plaintiff's problems begin with the fact that nowhere in the Complaint does
it allege what his national origin is. Plaintiff provides a single allegation about his
"culture" (Cx. ¶ 34) (Plaintiff "informed the SPCC that his eye contact is
sometimes lacking because of his Eastern European culture") but culture is not a
protected class under Title VI. Furthermore, even if Plaintiff's reference to his

culture could somehow be construed as identifying his national origin, Plaintiff fails to make any connection between UCF's disciplinary process and his lack of eye contact with others.

Ironically, a review of Plaintiff's conduct began when his Exam Proctors observed Plaintiff appearing to make <u>too much</u> eye contact with other students' exams. Plaintiff's allegations of excess eye movement and looking at other students while taking the Exam explains why he was suspected of possible misconduct. The alleged lack of eye contact when speaking with others, however, is not alleged to have had any impact on or relevance to UCF's disciplinary process.

As set forth above, Plaintiff specifically pleads that his claim is one of disparate impact. Plaintiff wrongly equates culture with national origin. Finally, UCF could not have based any alleged act or omission on Plaintiff's national origin because it did not know his national origin. For these reasons, Count II should be dismissed with prejudice as to all defendants.

## VII.  Counts III and IV of the Complaint Must be Dismissed Because Plaintiff Failed to Serve Notice Pursuant to Florida Statutes § 768.28(6)(a).[7]

Florida statute 768.28(6)(a) states:

---

[7] Defendants note that, if the Court dismisses Counts I and 2 of the Complaint, it no longer has jurisdiction over Plaintiff's state law claims and those claims should be dismissed with no other basis required. S*ee Camelio v. American Federation*, 137 F.3d 666, 672 (1st Cir. 1998).

> An action may not be instituted on a claim against the state or one of its agencies or subdivisions unless the claimant presents the claim in writing to the appropriate agency, and also, except as to any claim against a municipality, county, or the Florida Space Authority, presents such claim in writing to the Department of Financial Services, within 3 years after such claim accrues and the Department of Financial Services or the appropriate agency denies the claim in writing. . .

Plaintiff's Complaint does not allege that he has given the required notice (he has not) and so Counts III and IV should be dismissed. *Maynard v. State*, 864 So.2d 1232 (Fla. 1st DCA 2004).

## VIII.  Counts III and IV also Fail to State a Claim against the Individual Defendants pursuant to 768.28(9)(a) Florida Statutes.

768.28(9)(a) provides that:

> "No officer, employee, or agent of the state or any of its subdivisions shall be held liable in tort for any injury or damage suffered as a result of any act, event, or omission of action in the scope of her or his employment or function, unless such officer, employee, or agent acted in bad faith or with malicious purpose, or in a manner exhibiting wonton and willful disregard of human rights, safety, or property."

The Complaint does not alleged that any of the individual defendants acted in bad faith or with malicious purpose or in a manner exhibiting wonton and willful disregard of human rights, safety, or property. Accordingly, Counts III and IV of the Complaint are due to be dismissed as to the individual defendants.

## IX.    Conclusion

**WHEREFORE,** for the multiple reasons set forth above, Defendants University of Central Florida through its Board of Trustees, Basma Selim, Jonathan Kibble, and Marcy Verduin respectfully request an Order dismissing Plaintiff's Complaint in its entirety as to all Defendants with Counts I and II being dismissed with prejudice.

Respectfully submitted this 2nd day of March 2023.


/s/ *Mark Van Valkenburgh*
JEFFREY S. WEISS, ESQUIRE
Florida Bar No.  750565
MARK VAN VALKENBURGH, ESQUIRE
Florida Bar No. 065773
**GARGANESE, WEISS, D'AGRESTA &
SALZMAN, P.A.**
111 N. Orange Avenue, Suite 2000
Orlando, Florida  32801
Tel:  407-425-9566 / Fax:  407-425-9596
Primary email:        jweiss@orlandolaw.net
                      mvanvalkenburgh@orlandolaw.net
Secondary email: dguzman@orlandolaw.net
                      lfinke@orlandolaw.net

Attorneys for Defendants The University of
Central Florida Board of Trustees, Basma
Selim, Jonathan Kibble, and Marcy Verduin.

## <u>LOCAL RULE 3.01(g) CERTIFICATION</u>

I HEREBY CERTIFY that the undersigned has consulted with Plaintiff's attorney,

Keith Altman, via telephone who advised that Plaintiff is not prepared to amend

his Complaint at this time.

<div align="center" style="margin-left:40%">

/s/ <i>Mark L. Van Valkenburgh</i>
Attorney
</div>

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 1st day of March, 2023, a copy of the

foregoing was electronically filed with the Clerk of Court for the US District Court

for the Middle District of Florida using the CM/ECF system, which will send a notice

of electronic filing to:  Keith Altman, Esquire at The Law Office of Keith Altman,

33228 West 12 Mile Road, Suite 375, Farmington Hills, Michigan, 48331 at

keithaltman@kaltmanlaw.com.

<div align="center" style="margin-left:40%">

/s/ <i>Mark L. Van Valkenburgh</i>
Attorney
</div>

# UCF COLLEGE OF MEDICINE
# M.D. PROGRAM HONOR CODE

Preamble

The practice of medicine is a great privilege and carries with it a time-honored responsibility to our patients and our profession.  The students of the University of Central Florida College of Medicine M.D. program uphold this code as our pledge to ourselves and our medical community that we understand the significance of our commitment.  These standards should guide us not only during our medical training, but also during our lives as physicians, researchers, and community leaders.  In these roles, we hope to pursue actively the respect of our patients, peers, and fellow men and women, rather than to accept passively any esteem that may be given our title.

The core values we, as students, strive to exemplify are:

## INTEGRITY
The Tenacity to Carry Out Our Profession with Sound Moral Character

## PROFESSIONALISM
The Daily Fortitude to Uphold the Standards of the Title We Represent

## JUDGMENT
The Courage to Make Decisions with Assurance and Competency

## RESPECT
To Act with Consideration for the Dignity and Rights of Others

STUDENT PLEDGE

I am committed to upholding the student code core values.  I understand the procedures outlined in this document, and hereby agree to abide by them.

_____
Name (Please Print)

_____
Signature                                        Date

12/1/14                                EXHIBIT A