UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | |
|---|---|
| **RAZVAN RUSOVICI,** *Plaintiff,* v. **THE UNIVERSITY OF CENTRAL FLORIDA BOARD OF TRUSTEES; MARCY VERDUIN** (in her official and individual capacity); **DOE DEFENDANTS 1-20** (in their official and individual capacity), *Defendants.* | Case No. 6:22-cv-2172 **COMPLAINT** (1) Due Process Violation (2) Title VI Violation (3) Negligence (4) Negligent Infliction of Emotional Distress **JURY TRIAL DEMANDED** |

## I.   INTRODUCTION

1. This is an action arising from Plaintiff's forced withdrawal from the University of Central Florida following false allegations of a honor code violation. Plaintiff is seeking damages for Defendants' violations of due process and Title VI of the Civil Rights Act of 1964. Defendants are also responsible for negligence and negligent infliction of emotional distress.

## II.   PARTIES

2. Plaintiff Razvan Rusovici ("Plaintiff") is a former student of the University of Central Florida's College of Medicine.

3. Defendant The University of Central Florida Board of Trustees ("UCF") is a public university in Orlando, Florida.

4. Defendant Marcy Verduin ("Verduin") was employed by UCF as Associate Dean of Students at all times relevant to this litigation.

5. Doe Defendant 1-20 ("Doe Defendants") are employees or agents of Defendant St. John that caused the harms to Plaintiffs subject of this lawsuit. At this time, their names and whereabouts are unknown.

### III.   JURISDICTION & VENUE

6. This court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331, which provides district courts with jurisdiction over civil actions arising under the United States Constitution or laws of the United States.

7. In accordance with 28 U.S.C. § 1367, this Court also has supplemental jurisdiction over Plaintiffs' state law claims.

8. Defendant UCF conducts business within the State of Florida.

9. The other Defendants on the grounds that they were employees of UCF at all relevant times herein and personally violated certain rights and policies, the effects of which were felt in the State of Florida.

10. Venue in this action is properly in the Middle District of Florida because the events relevant to this action occurred primarily within the geographical confines of the Middle District of Florida.

## IV.   FACTUAL ALLEGATIONS

11.   Plaintiff was a student at UCF's College of Medicine medical, until being forced to withdraw on March 12, 2020 following the events laid out below.

12.   Plaintiff was a mature student, holding numerous other advanced degrees, including a Ph.D., and had achieved Dean's List honors at UCF.

13.   Before joining UCF, Plaintiff had been involved in defining rules and regulations against academic misconduct as a faculty member and Faculty Senate President at the Florida Institute of Technology.

14.   On January 27, 2020, Plaintiff took the S5 Musculoskeletal exam ("Exam") via laptop, using the "ExamSoft" assessment software.

15.   The Exam contained of 114 questions, to be answered at 90 seconds per question.

16.   During the time of the Exam, Plaintiff was dealing with high amounts of stress, lack of sleep, and anxiety due to his young son's medical problems and impending surgery.

17.   Despite this, Plaintiff did his utmost to be prepared for the exam and had been able to answer all training questions in a fashion that projected a passing score on the exam.

18. Upon arriving to the examination room, Plaintiff changed his seat to avoid the risk of being accused of cheating, after realizing he initially was seated less than three feet from an "A" grade student.

19. Following the Exam, Plaintiff was accused of engaging in academic misconduct by the two proctors Phillip Bellew ("Bellew") and Basma Selim ("Selim").

20. Defendants claimed Plaintiff was looking to the computer screens of the student sitting directly in front of him and the student to his right.

21. Notably, the slides pertaining to the examination questions were displayed on the screen's upper right portion.

22. Additionally, Plaintiff's anxiety because of his son's surgery caused him to appear "jumpy" and unfocused at times, with his eyes being drawn to students that were making a lot of noise.

23. Plaintiff was diagnosed with dry eyes caused by Meibomian gland infection, which also leads to him having to move his eyes more often.

24. In addition to dry eyes, Plaintiff also requires reading glasses. With his reading glasses on, it is very difficult for Plaintiff to see far.

25. In addition, supervision by two proctors, Plaintiff's clicks were recorded by ExamSoft and flagged whenever he was withing an arbitrary 15-second

limit on the same question with the person in front of him, even if he was the first to answer the question.

26.  ExamSoft had recorded 35 such events during Plaintiff's Exam.

27.  No explanation was given to Plaintiff to justify the arbitrary 15-second limit by Defendant Callahan.

28.  Plaintiff's clicks were then compared to five other students within his grade range of the class of a total of 120 students.

29.  No access to this electronic data was provided to Plaintiff at the time.

30.  On February 19, 2020, Plaintiff was informed of the possible honor violation during the Exam by Associate Dean of Students Jonathan Kibble ("Kibble").

31.  On February 21, 2020, Plaintiff attended an initial hearing held by the Student Professional Conduct Council ("SPCC") consisting of Mr. Kibble, Mrs. McClain, Mr. Foley and Mr. Orlando.

32.  During the meeting, Plaintiff informed the SPCC that his eye contact is sometimes lacking because of his Eastern European culture, where it is not usually polite to make direct eye contact.

33.  Plaintiff was discriminated against due to this lack of eye contact.

34.  The SPCC questioned Plaintiff's use of scrap paper provided by UCF instead of using ExamSoft itself.

35. Plaintiff explained that he usually writes down what he thinks might be the correct answers, which could not be replicated with the software.

36. Despite Plaintiff's explanations, the SPCC continued to question his use of the – University-provided – scratch paper.

37. Throughout the entirety of the meeting, Plaintiff was not provided with written material explaining or documenting the charges.

38. On February 25, 2020, Plaintiff was informed of the need of a formal hearing, scheduled for March 6, 2020.

39. On March 2, 2020, just four days before the hearing, Plaintiff was eventually given the data used to support his alleged honor violation.

40. Plaintiff hired a statistics company to review the data.

41. Because of the sheer volume of the data and the late actions of UCF in providing the data so shortly before the hearing date, Plaintiff had to request a one-week extension of the hearing, resulting in immense emotional distress for Plaintiff.

42. The data was provided to Plaintiff in a substantially unusable format on printout paper and required extraordinary efforts to evaluate and understand, instead of something functional like an Excel spreadsheet, which is the format it existed in when performing the analysis.

43. Plaintiff's analysis of the data showed:

   a. Plaintiff answered about 73% of questions before the other student.

    b. 33% of questions were answered differently between Plaintiff and the other student.

    c. For 81 out of the 130 flags the exam software produced, Plaintiff had already provided an answer or had a different answer.

    d. There were often multiple flags on the same question, sometimes flagged within just two seconds of each other, leading to an overcounting of the number of offending events.

    e. The flagging system is unreliable.

44. On March 12, 2020, Plaintiff reached out to Defendant Associate Dean of Students Dr. Marcy Verduin and Associate Dean of Academic Affairs, Dr. Richard Peppler in hopes of achieving an informal resolution with these new insights as outlined in Section 3.1.4.2. of the UCF College of Medicine MD Program Honor Code.

45. Plaintiff knew that even if found innocent at a formal hearing, his record would be stained for licensure in certain states.

46. Plaintiff was denied his request for an informal hearing by Defendant Verduin without any explanation.

47. Defendant Verduin acted in bad faith in denying Plaintiff's request for a hearing.

48. On March 12, 2020, Plaintiff therefore was forced to withdraw from UCF to avoid more damage to his professional and academic career.

49. As a direct and proximate result of Defendants' conduct, Plaintiff's academic and career prospects, earning potential, and reputation have been severely harmed.

50. Plaintiff suffered the loss of educational and professional opportunities, loss of career prospects, and other consequential damages, in addition to experiencing severe emotional distress.

51. Defendants were notified of the claims being brough against them pursuant to Florida Statute on April 21, 2022.

## Respondeat Superior And Agency

52. Plaintiff restates each and every allegation set forth in the preceding paragraphs of this Complaint as if fully set out herein.

53. Under Federal and Florida law, an employer may be vicariously liable for an employee's actions when they are acting within the scope of their employment on behalf of the employer.

54. At all times relevant to this action, all individual Defendants were employed by UCF. Some of their acts and omissions relevant to this litigation were undertaken within the scope of their employment with UCF.

8

55. At the time of this Complaint, only the individual Defendants themselves are aware of the exact role that each individual Defendant played in the events that are the subject of the lawsuit. For this reason, only the individual Defendants know at which times each Defendant acted in a manner that exceeded the scope of their duties in their official capacities and at which each Defendant acted in a manner that was within the scope of their duties in their official capacities.

## V.    CAUSES OF ACTION

### FIRST COUNT – VIOLATION OF DUE PROCESS UNDER 42 U.S.C. § 1983
### (As to Defendant UCF)

56. Plaintiff restates each and every allegation set forth in the preceding paragraphs of this Complaint as if fully set out herein.

57. As a public University, Defendant UCF has to adhere to due process requirements.

58. Plaintiff has a property interest in continuing his education at UCF without false allegations on his record.

59. Plaintiff and Defendant UCF entered into a contract by which Defendant UCF offered admission to Plaintiff on specified terms.

60. Plaintiff accepted Defendant's offer and attended UCF as a student.

61. There was a mutual exchange of consideration for which Plaintiff attended UCF involving payments and expenditure of time as well as UCF making

its services including educational opportunities available to Plaintiffs, until Plaintiff would graduate.

62. Plaintiff had a constitutionally protected and clearly established liberty interest. "The Due Process Clause . . . forbids arbitrary deprivations of liberty. Where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, the minimal requirements of the Clause must be satisfied." *Goss v. Lopez*, 419 U.S. 565, 574 (1975) (internal citation and quotations omitted). A record of alleged honor code violations is detrimental to Plaintiff's good name and reputation, as it will appear on future applications in Plaintiff's academic and employment life.

63. Plaintiff has a fundamental property and liberty interest in continuing his education at UFC and as such were entitled to a fair and impartial process with a systematic method for evaluating his alleged honor code violation.

64. Defendants have violated Plaintiff's due process rights by forcing him to withdraw without providing a fair procedure regarding his alleged honor code violation.

    a. Bellew and Selim claimed Plaintiff was looking at other student's computer screen without being able to provide evidence.

    b. Defendant UCF used ExamSoft, an unreliable and arbitrary assessment software.

    c. The SPCC did not provide Plaintiff with the evidence used against him during the meeting.

    d. The SPCC used Plaintiff's use of scrap paper against him, despite such use of scrap paper being encouraged by UCF.

    e. Defendant UCF provided the data used as evidence against him in an unusable format only four days before the formal hearing.

    f. The data used by Defendants showed that Plaintiff answered many questions before the other student or that the same question was flagged multiple times, but the flags were still used against Plaintiff by Defendants.

    g. Defendants Verduin and Mr. Peppler denied Plaintiff's request for an informal resolution without an explanation, denying Plaintiff the opportunity to appeal this decision.

65. Doe Defendants violated Plaintiff's constitutional rights in a manner to be determined during the course of the present litigation.

66. Plaintiff was not given the opportunity to present any meaningful defense on his own behalf when he was provided with the evidence too late in the process and in unusable format.

67. As a direct and proximate result of the actions of the Defendants, Plaintiff was deprived of his constitutional rights.

68. As a direct and proximate result of Defendants' actions or failures, Plaintiff has sustained and continues to sustain injuries and damages in the form of loss of educational and professional opportunities, loss of career prospects, and other consequential damages, in addition to experiencing severe emotional distress, justifying the need for injunctive and other relief.

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that this Court:

(a) Enter judgment against Defendants and in favor of Plaintiff for an injunction requiring Defendants to expunge all records related to Plaintiff's alleged honor code violation, as well as requiring Defendants to readmit Plaintiff to UCF.

### SECOND COUNT – VIOLATION OF DUE PROCESS UNDER 42 U.S.C. § 1983
### (As to Individual Defendants)

69. Plaintiff restates each and every allegation set forth in the preceding paragraphs of this Complaint as if fully set out herein.

70. As a public University, Defendant UCF has to adhere to due process requirements.

71. Plaintiff has a property interest in continuing his education at UCF without false allegations on his record. Plaintiff and Defendant UCF entered into a contract by which Defendant UCF offered admission to Plaintiff on specified terms.

72. Plaintiff accepted Defendant's offer and attended UCF as a student.

73. There was a mutual exchange of consideration for which Plaintiff attended UCF involving payments and expenditure of time as well as UCF making its services including educational opportunities available to Plaintiffs, until Plaintiff would graduate.

74. Plaintiff had a constitutionally protected and clearly established liberty interest. "The Due Process Clause . . . forbids arbitrary deprivations of liberty. Where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, the minimal requirements of the Clause must be satisfied." *Goss v. Lopez*, 419 U.S. 565, 574 (1975) (internal citation and quotations omitted). A record of alleged honor code violations is detrimental to Plaintiff's good name and reputation, as it will appear on future applications in Plaintiff's academic and employment life.

75. Plaintiff has a fundamental property and liberty interest in continuing his education at UFC and as such were entitled to a fair and impartial process with a systematic method for evaluating his alleged honor code violation.

76. Defendant violated Plaintiff's due process rights by forcing him to withdraw without providing a fair procedure regarding his alleged honor code violation.

    a. Defendant Verduin denied Plaintiff's request for an informal resolution, denying Plaintiff the opportunity to appeal this decision.

13

77. Doe Defendants violated Plaintiff's constitutional rights in a manner to be determined during the course of the present litigation.

78. Plaintiff was not given the opportunity to present any meaningful defense on his own behalf when he was provided with the evidence too late in the process and in unusable format.

79. As a direct and proximate result of the actions of the Defendants, Plaintiff was deprived of his constitutional rights.

80. As a direct and proximate result of Defendants' actions or failures, Plaintiff has sustained and continues to sustain injuries and damages in the form of loss of educational and professional opportunities, loss of career prospects, and other consequential damages, in addition to experiencing severe emotional distress, justifying the need for injunctive and other relief.

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that this Court:

(a) Enter judgment against Defendants and in favor of Plaintiff for actual damages for financial loss, damage to reputation, humiliation, mental anguish, and emotional distress and punitive damages in amounts to be determined at trial and as are allowed under the statute;

(b) Enter judgment against Defendants and in favor of Plaintiff for an injunction requiring Defendants to expunge all records related to

    Plaintiff's alleged honor code violation, as well as requiring Defendants to readmit Plaintiff to UCF;

(c) Enter judgment against Defendants and in favor of Plaintiff for all costs sustained in connection with the prosecution of this action, including attorneys' fees; and

(d) Grant such other and further relief as justice requires.

### THIRD COUNT – NATIONAL ORIGIN DISCRIMINTION IN VIOLATION OF TITLE VI OF THE CIVIL RIGHTS ACT OF 1964

81. Plaintiff restates each and every allegation set forth in the preceding paragraphs of this Complaint as if fully set out herein.

82. Title VI of the Civil Rights Act of 1964 (20 U.S.C. §§ 2000d) states in pertinent part:

> "No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."

83. At all times herein mentioned, UCF was a public university that received federal financial assistance through grants and federally assisted tuition payments collected from students.

84. Therefore, UCF's staff behavior during any activities organized through UCF, including the process of investigating alleged honor code violations, falls under the ambit of Title VI of the Civil Rights Act of 1964.

15

85. The SPCC violated Plaintiff's rights under Title VI of the Civil Rights Act of 1964 when, having awareness of Plaintiff's national origin and its customs of eye contact, they failed to account for any cultural differences throughout the entire discipline process.

86. This suggests that the implementation of UCF's policies has a disparate impact on minority students at UCF.

87. As a direct and proximate result of Defendants' actions or failures, Plaintiff has sustained and continues to sustain injuries and damages in the form of loss of educational and professional opportunities, loss of career prospects, and other consequential damages, in addition to experiencing severe emotional distress.

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that this Court:

(a) Enter judgment against Defendants and in favor of Plaintiff for actual damages for financial loss, damage to reputation, humiliation, mental anguish, and emotional distress and punitive damages in amounts to be determined at trial and as are allowed under the statute;

(b) Enter judgment against Defendants and in favor of Plaintiff for an injunction requiring Defendants to expunge all records related to Plaintiff's alleged honor code violation, as well as requiring Defendants to readmit Plaintiff to UCF;

(c) Enter judgment against Defendants and in favor of Plaintiff for all costs sustained in connection with the prosecution of this action, including attorneys' fees; and

(d) Grant such other and further relief as justice requires.

## VI.   JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: March 23, 2023    Respectfully submitted,

Keith Altman, Esq.  (*pro hac vice*)
THE LAW OFFICE OF KEITH ALTMAN
33228 West 12 Mile Road, Suite 375
Farmington Hills, Michigan 48331
Telephone: (248) 987-8929
keithaltman@kaltmanlaw.com

*Attorney for Plaintiff*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 23rd day of March, 2023, a copy of the foregoing was electronically filed with the Clerk of Court for the US District Court for the Middle District of Florida using the CM/ECF system, which will send a notice of electronic filing to all registered parties/counsel.

*/s/ Keith Altman*
Keith Altman, Esq.
*Attorney for Plaintiff*
