**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**RAZVAN RUSOVICI,**

    **Plaintiff,**

**v.**                                                    **Case No. 6:22-cv-2172-ACC-EJK**

**MARCY VERDUIN, DOE DEFENDANTS**
**1-20, and THE UNIVERSITY OF**
**CENTRAL FLORIDA BOARD OF**
**TRUSTEES,**

    **Defendants.**

_____

**ORDER**

This cause comes before the Court on Defendants' Motion to Dismiss the Amended Complaint (Doc. 22) and Plaintiff's Response (Doc. 26). Because Plaintiff's due process claim against the public university in Count I is barred by Eleventh Amendment immunity, it will be dismissed for lack of subject matter jurisdiction. To the extent Plaintiff intends to assert a claim for national-origin discrimination under Title VI of the Civil Rights Act against the university, he will granted leave to replead. (Count III).

Plaintiff's claims against the individual Defendant, Associate Dean Marcy Verduin, Count II will also be dismissed. However, Plaintiff will be granted leave to file a second amended complaint to assert a substantive due process claim against Verduin.

# I.    BACKGROUND

## A. Factual Background

Plaintiff, Razvan Rusovici, is a former student of the University of Central Florida's ("UCF") College of Medicine. (Doc. 20 ¶¶ 2-3).[1] On January 27, 2020, Plaintiff took a 114-question musculoskeletal exam (the "Exam") on the computer using ExamSoft assessment software. (*Id.* ¶¶ 14-15). During the Exam, Plaintiff appeared jumpy and unfocused due to anxiety related to a relative's surgery; his eyes were also drawn to students who were making "a lot of noise." (*Id.* ¶ 22). Additionally, Plaintiff had been diagnosed with a glandular infection and had "dry eyes," which made him move his eyes around more often than other students during the Exam. (*Id.* ¶ 23).

On the day of the Exam, the ExamSoft system recorded Plaintiff's "clicks" and flagged them whenever his "click" (to select an answer) was within fifteen seconds[2] on the same question as the person in front of him. (*Id.* ¶ 25). ExamSoft recorded thirty-five such "clicks" by Plaintiff during the Exam. (*Id.* ¶¶ 25-26). Following the Exam, UCF proctors accused Plaintiff of academic misconduct, and UCF compared the ExamSoft results to the results of five of the 120 other students

---

[1] Although Plaintiff lists in the caption of the Amended Complaint (Doc. 20) state claims for negligence and negligent infliction of emotional distress, these state claims are not asserted in the body of the pleading and are treated as abandoned in this federal case.

[2] Plaintiff alleges that the fifteen-second limit was "arbitrary" and "no explanation to justify" the limit was given "by Defendant Callahan" (Doc. 20 ¶ 27), although there is no such named Defendant, proctor (*id.* ¶ 19), or member of the SPCC listed (*id.* ¶ 31).

in his class. (*Id*. ¶¶ 19, 28). On February 19, 2020, UCF's Associate Dean of Students, Jonathan Kibble, informed Plaintiff of a "possible honor [code] violation" based on the conduct observed during the Exam. (*Id*. ¶ 30). On February 21, 2020, an "initial hearing" was held by the Student Professional Conduct Council ("SPCC") consisting of Associate Dean Kibble and three other individuals[3]. (*Id*. ¶ 31). During the SPCC's "initial hearing," Plaintiff stated that "his eye contact is sometimes lacking because of his Eastern European culture, where it is not usually polite to make direct eye contact." (*Id*. ¶ 31). The SPCC persisted in asking Plaintiff questions about his use of scrap paper to write down correct answers, rather than using ExamSoft to enter the answers. (*Id*. ¶¶ 34-36).

After the SPCC's "initial hearing," on February 25, 2020, Plaintiff was informed that a formal hearing was scheduled for March 6, 2020. (*Id*. ¶ 38). Plaintiff was provided the ExamSoft data regarding his Exam on March 2, 2020, four days before the scheduled formal hearing. (*Id*. ¶ 39). Plaintiff requested a one-week extension of the March 6, 2020 hearing in order to review the data,[4] which UCF granted, and the hearing date was rescheduled, thus it would have been held on March 13, 2020. (*Id*. ¶ 41).

---

[3] The other members of the SPCC were Mrs. McClain, Mr. Foley, and Mr. Orlando, but not Defendant Marcy Verduin. (Doc. 20 ¶ 31).

[4] Plaintiff alleges that he hired a "statistics company" to review the data. (Doc. 20 ¶ 40). Plaintiff contends that the analysis of the data showed that the "flagging system" was "unreliable," among other findings. (*Id*. ¶ 43).

On March 12, 2020, Plaintiff contacted Defendant Dr. Marcy Verduin, UCF Associate Dean of Students, to request an "informal hearing."[5] (Doc. 20 ¶ 4). Defendant Verduin denied Plaintiff's request for an "informal hearing." (*Id.* ¶¶ 46-47). The same day, on March 12, 2020, and one day prior to the scheduled formal hearing, Plaintiff voluntarily withdrew from UCF. (*Id.* ¶¶ 11, 48).

### B. *Procedural History*

On November 21, 2022, Plaintiff filed suit against UCF "through its Board of Trustees," as well as Kibble, Verduin, and the two proctors present at the Exam. (Doc. 1). Following service on them in February 2023, Defendants filed a Motion to Dismiss Plaintiff's Complaint. (Doc. 14). Plaintiff filed an Amended Complaint on March 23, 2023, restyling the claims as against "the University of Central Florida Board of Trustees,"[6] and Verduin, in her official and individual capacity, thereby dropping the other named individual Defendants.[7] (Doc. 20).

---

[5] Plaintiff alleges that an "informal" resolution is "outlined in Section 3.1.4.2 of the UCF College of Medicine MD Program Honor Code." He has not attached a copy of the Honor Code to the Amended Complaint.

[6] *See* Fla. Stat. § 1001.72.

[7] Although Plaintiff lists "Doe Defendants 1-20" in the Amended Complaint, he fails to make any allegations of specific conduct and refers to them generally as "employees or agents of Defendant *St. John*." (Doc. 20 ¶¶ 5, 65 ("Doe Defendants violated Plaintiff's constitutional rights in a manner to be determined during the course of the present litigation.")). No additional Defendants have been identified or served within the time set forth in Federal Rule of Civil Procedure 4(m) ("If a defendant is not served within 90 days after the complaint is filed, the court . . . must dismiss the action without prejudice against that defendant or order that service be made within a specified time."). The deadline to amend pleadings expired on June 2, 2023. (*See* Doc. 24).

The Court denied without prejudice Defendants' original Motion to Dismiss as mooted by Plaintiff's filing of the Amended Complaint. (Doc. 21). UCF and Verduin filed their Motion to Dismiss the Amended Complaint on April 6, 2023. (Doc. 22). Plaintiff filed his Response in Opposition to the Motion to Dismiss on April 27, 2023. (Doc. 26). The matter is ripe for review.

## II.   STANDARD OF REVIEW

Defendants UCF and Verduin argue that Plaintiff's claims in the Amended Complaint should be dismissed under Federal Rule of Civil Procedure 12(b)(6). In addition, because UCF moves to dismiss the Amended Complaint based on Eleventh Amendment immunity, the Court must assess whether it has subject matter jurisdiction over the claims against UCF under Rule 12(b)(1).

For purposes of deciding a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the Court accepts as true the factual allegations in the complaint and draws all reasonable inferences in the light most favorable to the plaintiff. *Randall v. Scott*, 610 F.3d 701, 705 (11th Cir. 2010). "Generally, under the Federal Rules of Civil Procedure, a complaint need only contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Id.* (quoting Fed. R. Civ. P. 8(a)(2)). However, the plaintiff's complaint must provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). Thus, the Court is not required to accept as true a legal conclusion merely because it is labeled a "factual allegation" in the complaint; it must also meet the threshold inquiry of facial plausibility. *Id.*

Rule 12(b)(1) enables a defendant to move to dismiss a complaint for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Rule 12(b)(1) applies to UCF's arguments based on the Eleventh Amendment. *See Smith v. Avino,* 91 F.3d 105, 107 (11th Cir. 1996)*, abrogated on other grounds by Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 118 S. Ct. 1003, 140 L. Ed. 2d 210 (1998) ("Under the law of this Circuit, Eleventh Amendment immunity is considered to be in the nature of subject matter jurisdiction. . . ."). When considering a facial attack on subject matter jurisdiction, [8] the court must, as with a Rule 12(b)(6) motion, take the complaint's allegations as true. *Morrison v. Amway Corp.*, 323 F.3d 920, 925 n.5 (11th Cir. 2003).

## II.    ANALYSIS

### A. Count I against UCF

---

[8]. Defendants state in their Motion to Dismiss that a copy of the Honor Code is attached to their Motion as Exhibit A (Doc. 22 at 10), however, it was not attached or otherwise on the docket. (*See also* Doc. 14 at 22 (first page only)). Therefore, because neither party has submitted any extrinsic evidence, the challenge to jurisdiction is not a "factual attack." *Cf. Houston v. Marod Supermarkets, Inc*., 733 F.3d 1323, 1335–36 (11th Cir. 2013) (construing a 12(b)(1) challenge as factual because the parties submitted evidence outside of the complaint).

In Count I Plaintiff asserts a § 1983 claim against UCF for violation of due process. Section 1983 allows claims against any person who, acting under color of state law, deprives another of a constitutional or federal statutory right. 42 U.S.C. § 1983; *Griffin v. City of Opa–Locka*, 261 F.3d 1295, 1303 (11th Cir. 2001) ("[T]o prevail on a civil rights action under § 1983, a plaintiff must show that he or she was deprived of a federal right by a person acting under color of state law."). UCF argues that Count I should be dismissed because UCF does not qualify as a "person" under 42 U.S.C. §1983. (Doc. 22 at 6). Plaintiff responds that Defendant UCF is a "person" for purposes of the reading of the statute. (Doc. 26 at 2). However, the United States Supreme Court has concluded that a state or state agency is not a "person" against whom a § 1983 claim may be brought. *Edwards v. Wallace Cmty. Coll.*, 49 F.3d 1517, 1524 (11th Cir. 1995) (citing *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989)).

UCF also argues that Plaintiff's § 1983 claim is barred by the Eleventh Amendment to the United States Constitution. An assertion of Eleventh Amendment immunity challenges a court's subject matter jurisdiction and "must be resolved before a court may address the merits of the underlying claim(s)." *See Seaborn v. State of Fla., Dep't of Corrections*, 143 F.3d 1405, 1407 (11th Cir. 1998). The Eleventh Amendment provides that the "Judicial power of the United States shall not be construed to extend to any suit . . . commenced or prosecuted against one of the . . . States" by citizens of another State, or by citizens or subjects of any foreign

state." U.S. CONST. amend. XI. "Although the text of the Eleventh Amendment does not appear to bar federal suits against a state by its own citizens, the Supreme Court long ago held that the Amendment bars these suits." *Williams v. Dist. Bd. of Trs. of Edison Cmty. Coll.*, Fla., 421 F.3d 1190, 1192 (11th Cir. 2005); *Lapides v. Bd. of Regents of Univ. Sys. of Georgia*, 535 U.S. 613, 618 (2002) (citing *Hans v. Louisiana*, 134 U.S. 1 (1890)).

UCF argues that it is entitled to Eleventh Amendment immunity because it is an established arm of the State and such immunity applies to the State and its officials acting in their official capacities. (Doc. 22 at 4-5 (citing *Hillemann v. Univ. of Cent. Fla.*, 167 F. App'x. 747, 748 (11th Cir. 2006); *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989); *Carr v. City of Florence, Ala.*, 916 F.2d 1521, 1524 (11th Cir. 1990)). "The Supreme Court has held that, absent a legitimate waiver by the State or abrogation by Congress, the Eleventh Amendment is an absolute bar to suit by an individual against a state in a federal court." *See McWilliams v. Escambia Charter Sch.*, 144 F. App'x 840, 843 (11th Cir. 2005) (affirming dismissal of § 1983 claim against the Florida Attorney General in his official capacity)[9] (citation omitted); *McClendon v. Ga. Dep't of Cmty. Health*, 261 F.3d 1252, 1259 (11th Cir. 2001) (citing *Whiting v. Jackson State University*, 616 F.2d 116, 126 n. 8 (5th Cir. 1980)).

---

[9] Unpublished opinions of the Eleventh Circuit constitute persuasive, and not binding, authority. *See* 11th Cir. R. 36-2 and I.O.P. 6.

Plaintiff responds that, because Eleventh Amendment immunity does not extend to independent political entities such as counties or municipalities, "[i]t is unconscionable that a university might be covered by Eleventh Amendment immunity while a local county or municipalit[y] is not." (Doc. 26 at 6). However, Plaintiff cites no authority that countermands the clear Supreme Court precedent cited by UCF. Moreover, it is "well-settled that Eleventh Amendment immunity bars suits brought in federal court when an arm of the State is sued." *Williams*, 421 F.3d at 1192 (citation and internal quotation marks omitted).

A court is to consider the following factors when determining whether an entity such as UCF in this case is an arm of the state for Eleventh Amendment purposes: "(1) how the state defines the entity; (2) what degree of control the state maintains over the entity; (3) where the entity derives its funds; and (4) who is responsible for judgment against the entity." *Id*. After review of the relevant factors, state law, and cases directly on point involving public universities in Florida, the Court determines that UCF is an arm of the state for Eleventh Amendment purposes. *See* Fla. Stat. §§ 768.28(2) ("state agencies . . . include . . . state university boards of trustees"), 1001.70-1001.73*; see also Crisman v. Fla. Atl. Univ. Bd. of Trs.*, 572 F. App'x 946, 946 (11th Cir. 2014) (concluding board of trustees of state-funded Florida Atlantic University entitled to Eleventh Amendment immunity); *Pinkston v. Univ. of S. Fla. Bd. of Trustees*, No. 8:15-CV-1724-T-33TBM, 2016 WL 3196474, at *4 (M.D. Fla. June 9, 2016) (holding that University of South Florida was "an arm

of the state" for Eleventh Amendment purposes); *Saavedra v. USF Bd. of Trs.*, No. 8:10-cv-1935-T-17TGW, 2011 WL 1742018, at *2-3 (M.D. Fla. May 6, 2011) (finding USF Board of Trustees entitled to Eleventh Amendment immunity).

Plaintiff alternatively argues that an exception to Eleventh Amendment immunity applies because he is seeking "injunctive relief." (*Id*. at 3). Plaintiff is correct that courts have recognized three exceptions which allow suits against a state, state agency, or state officials: (1) Congress may abrogate the States' immunity; (2) a state may waive its immunity; or (3) under the *Ex parte Young* doctrine, a plaintiff may file suit against state officials acting in their official capacities seeking prospective injunctive relief for ongoing violations of federal law. *Williams*, 477 F.3d at 1301 ("[A] party may sue the state if the state has waived its immunity or if Congress has validly abrogated the state's immunity.") (citations omitted); *Summit Med. Assocs., P.C. v. Pryor*, 180 F.3d 1326, 1336–42 (11th Cir. 1999) (applying the *Ex parte Young* doctrine).

UCF argues that none of these exceptions apply to Plaintiff's § 1983 claim against it because (1) the State of Florida has not waived its Eleventh Amendment immunity but, in fact, has expressly retained it; and (2) Congress has not abrogated Florida's Eleventh Amendment immunity. (Doc. 22 at 5 (citing Fla. Stat. § 768.28(18); *Louisius v. Fla. Dept. Corr.*, 2015 WL 667973 at *5 (M.D. Fla. Feb. 17, 2015); *Camm v. Scott*, 834 F. Supp. 2d 1342, 1347 (M.D. Fla. 2011)). Plaintiff does not challenge either point regarding waiver or abrogation which would subject the

State to suit, and these exceptions do not apply to his § 1983 claim against UCF. *See*

*Hart v. Florida*, No. 8:13-cv-2533-T-30MAP, 2013 WL 5525644, at *1 (M.D. Fla.

Oct. 4, 2013) ("Florida has not waived its Eleventh Amendment immunity, nor has

Congress abrogated that immunity in § 1983 cases.") (citation omitted)); *see also*

*Schopler v. Bliss*, 903 F.2d 1373, 1379 (11th Cir. 1990) ("This court has held that

[Fla. Stat.] section 768.28 does not waive Florida's Eleventh Amendment

immunity.").

Plaintiff focuses his argument on the third exception, arguing that it applies

here because he seeks injunctive relief. His Amended Complaint seeks "an

injunction requiring Defendants to expunge records related to his alleged honor code

violation and readmission of Plaintiff to UCF. (Doc. 20 at 12). Construing Plaintiff's

claims in the light most favorable to him for purposes of this Motion to Dismiss and

assuming *arguendo* that he alleges a viable claim for *prospective* relief[10] against the

university, the UCF Board of Trustees argues that such a claim against it would still

be barred, even under the doctrine of *Ex parte Young*. (Doc. 22 at 6)(citing *Eubank*

*v. Leslie*, 210 Fed. Appx. 837, 844 (11th Cir. 2006)). UCF is correct.

As the appellate court has summarized in explaining this exception:

> The Eleventh Amendment has been construed to bar suits against
> a state brought by that state's own citizens, absent the state's consent.
> *McClendon v. Ga. Dep't of Cmty. Health*, 261 F.3d 1252, 1256 (11th
> Cir. 2001). The well-recognized exception to the general rule is "for

---

[10] The Court need not decide whether the relief Plaintiff sought constitutes "prospective injunctive relief" within the meaning of *Ex parte Young*.

suits against state officers seeking prospective equitable relief to end continuing violations of federal law." *Id.* (emphasis in original). *See also Ex parte Young*, 209 U.S. 123, 159–60, 28 S.Ct. 441, 454, 52 L.Ed. 714 (1908).

Here Eubank sought prospective relief as to the University of Alabama Board of Trustees, a state agency, in the form of declaratory and injunctive relief. *State agencies, however, are never subject to unconsented suit, even under the doctrine of Ex parte Young. Ex parte Young* applies only when state officials are sued for prospective relief in their official capacity. It does not permit suit against state agencies or the state itself, even when the relief is prospective. *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 100–03, 104 S.Ct. 900, 908–09, 79 L.Ed.2d 67 (1984); *see also Sessions v. Rusk State Hosp.*, 648 F.2d 1066, 1069 (5th Cir. Unit A June 1981) (noting that "neither the state nor its agencies may be sued for injunctive relief in federal court, although injunctive or prospective relief may be sought against state officials without invoking the eleventh amendment bar").

The University of Alabama Board of Trustees is a state agency, not a state official acting in its official capacity. *See Harden v. Adams*, 760 F.2d 1158, 1163 (11th Cir.1985). Hence, *the exception to 11th Amendment immunity set out in Ex parte Young does not apply to claims against it*, and the district court did not err in dismissing Eubank's claim for prospective relief on Eleventh Amendment immunity grounds.

*Eubanks,* 210 F. App'x at 844-45 (emphasis added). Similarly, Plaintiff cannot bring a claim under federal or state law in this federal court against the "UCF Board of Trustees"[11] because it is a state agency, not a state official acting in its official capacity. *See id*. at 845. "[A] suit in which [a] State or one of its agencies or

---

[11] Plaintiff did not sue the Board of Trustee members in their individual capacities. *See Eubank*, 210 F. App'x at 845 n.5 (holding any potential claim against university Board of Trustee members in their individual capacities was waived where the plaintiff did not name them in the complaint). There is no allegation that Associate Dean Verduin was associated with the SPCC or that she has the authority to grant the relief sought, only that she declined to hold an "informal hearing" for Plaintiff.

departments is named as the defendant is proscribed by the Eleventh Amendment." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). "This jurisdictional bar applies regardless of the nature of the relief sought" and regardless of whether a plaintiff's claims are brought under federal or state law. *Id*.; *Univ. of South Ala. v. Am. Tobacco*, 168 F.3d 405, 412 (11th Cir. 1999) (holding agencies or instrumentalities of the state are immune from suit in federal court). Accordingly, the Court will dismiss Plaintiff's § 1983 claim against UCF, as alleged in Count I, for lack of subject matter jurisdiction.

### B. Count III – Title VI Discrimination against UCF [12]

Plaintiff alleges in Count III a claim for violation of Title VI of the Civil Rights Act of 1964 which bans discrimination in programs receiving federal financial assistance such as universities. 42 U.S.C. § 2000d. The Amended Complaint alleges that the SPCC violated "Plaintiff's rights under Title VI of the Civil Rights Act of 1964 when, having awareness of Plaintiff's national origin and its customs of eye contact, they failed to account for any cultural differences throughout the entire discipline process." (Doc. 20 ¶ 85). He alleges that this "suggests that the implementation of UCF's policies has a *disparate impact* on minority students at UCF." (*Id*. ¶ 86) (emphasis added).

#### 1. Count III asserted against UCF

---

[12] Plaintiff did not specify in the Amended Complaint which Defendant Count III was asserted against.

UCF alleges that that Title VI prohibits only intentional discrimination, and Plaintiff's claim on its face pleads only disparate impact, not disparate treatment. UCF argues that Plaintiff has "wrongly equate[d] culture with national origin," he has failed to allege his national origin in the Amended Complaint, and "culture" by itself is not a protected class under Title VI. UCF contends that the Amended Complaint does not allege any facts in support based on the claim that UCF discriminated against him due to a lack of eye contact or that any UCF staff member noticed a lack of eye contact.

Plaintiff represents in his Response that his national origin is Romanian, and "therefore, [he] engages in conduct that is common within Eastern European cultures." (Doc. 26 at 15). He alleges that he informed the SPCC that "he was from an Eastern European culture where it is impolite to make direct eye contact" and asked the Council not to "judge the honesty [of] his answers based on [lack of] eye contact alone," but the SPCC failed to "account for the cultural differences throughout the entire discipline process" and, he alleges, "viewed [him] as untrustworthy." (*Id*.). He also alleges that he "was treated differently than students of alternate ethnic backgrounds." (*Id.*).

In order to state a claim under Title VI for discrimination by a "program or activity receiving Federal financial assistance," the plaintiff must allege the following elements: (1) discrimination; (2) that is based on race, color, or national origin; and (3) the intent to discriminate. 42 U.S.C. § 2000d; *Goodman v. President*

*& Trustees of Bowdoin Coll.*, 135 F. Supp. 2d 40, 48 (D. Me. 2001) (noting that Title VI itself directly reaches only instances of intentional discrimination) (citations omitted).

UCF is correct that private plaintiffs seeking judicial enforcement of Title VI's nondiscrimination protections cannot bring a "disparate-impact" claim—as Plaintiff has thus far alleged—under Title VI and instead must provide facts in support of "intentional discrimination." *See Alexander v. Sandoval*, 532 U.S. 275, 280-81 (2001). In the Amended Complaint, Plaintiff has alleged only a bare "disparate impact" claim (Doc. 20 ¶ 86) under Title VI and has not alleged sufficient facts within the Amended Complaint to support an intentional discrimination claim based on his national origin. *See, e.g, Goodman*, 135 F. Supp. 2d at 48 (denying college's motion to dismiss claim of American student expelled for fighting who sufficiently alleged that the other student in fight, from Korea, was treated more favorably in disciplinary proceeding and was not expelled).

UCF argues that Plaintiff's Amended Complaint fails to allege "any connection between UCF's disciplinary process and his lack of eye contact with others" and he relies on the conclusory opinion that he was discriminated against due to his lack of eye contact. "Subjective belief alone cannot prove intentional discrimination." *Mandawala v. Ne. Baptist Hosp.*, 16 F.4th 1144, 1151 (5th Cir. 2021) (finding subjective belief and feeling that program's instructor treated nonwhite students differently was conclusory and, without more, did not allow for a

- 15 -

reasonable inference of intentional discrimination). Although Plaintiff expands on his discrimination claims slightly in his Response, he has failed to allege any facts supporting a "national origin" claim in his pleading. In addition, the identification of his "national origin"—currently asserted only in his Response to the Motion to Dismiss—does not amend the operative pleading. Plaintiff will be given the opportunity to amend his Title VI claim to correct these deficiencies.

   *2. Count III asserted against Verduin*

   To the extent Plaintiff alleges a claim against Dean Verduin, she contends that she is entitled to dismissal of Plaintiff's Title VI discrimination claim because only public and private entities can be held liable under Title VI, and not individuals. In his Response, "Plaintiff concedes that there is no individual liability under Title VI. As such, claims brought against Defendant Verduin in her individual capacity should be dismissed." (Doc. 26 at 16).

   **C. Count II claim against Dean Verduin in her individual capacity**

   Dean Verduin argues that the § 1983 claim for violation of Plaintiff's due process rights should be dismissed because Plaintiff has failed to allege any action taken by Verduin was done in her *individual* capacity, as opposed to her *official* capacity, which would be barred by Eleventh Amendment immunity, as explained above. *See, e.g., Washington v. Bauer*, 149 F. App'x 867, 870 (11th Cir. 2005) ("In regard to § 1983 suits against state agencies and state officials, in their official capacities, the Eleventh Amendment of the Federal Constitution generally prohibits

such actions."). Plaintiff appears to concede the point that he must assert his § 1983 claim against Verduin as an individual capacity claim by omitting any discussion of an official capacity claim. (*See* Doc. 26 at 8 ("Due Process Claim Against Marcy Verduin in her Individual Capacity")).

Plaintiff alleges in the Amended Complaint that Verduin violated his right to due process when she "acted in bad faith" and denied "without any explanation" his request for an "informal hearing" and the opportunity to appeal this decision. (Doc. 20 ¶¶ 44-47, 77).[13] Verduin argues that Plaintiff's allegation of requesting an "informal hearing" was solely based on her capacity as the Associate Dean of Students, and she would have no ability in her individual capacity to impact Plaintiff's situation; thus, she argues that Plaintiff has not stated an individual-capacity claim against her. Plaintiff responds that he has properly alleged that Verduin failed to exercise professional judgment in denying him the appropriate due process, and ultimately impacted his ability to finish a medical degree.

### 1. *Procedural Due Process Violation under § 1983*

For university students subjected to disciplinary proceedings involving suspension or expulsion,[14] due process of law requires "reasonable notice and an

---

[13] Although he alleges that "Plaintiff was not given the opportunity to present any meaningful defense on his own behalf when he was provided with the evidence too late in the process and in unusable format," he does not identify which Defendant was individually responsible. (Doc. 20 ¶ 78). Moreover, his request for an extension of the formal hearing *was* granted.

[14] Plaintiff withdrew before the Honor Hearing; however, he was involved in disciplinary proceedings which could have resulted in suspension or expulsion.

opportunity to have a hearing." *See Nash v. Auburn Univ.*, 812 F.2d 655, 660 (11th Cir. 1987).[15]  Although "not coextensive with the rights" of criminal or civil litigants, the hearing afforded a student should provide "an opportunity to present [his] side in considerable detail." *See Sarver v. Jackson*, 344 F. App'x 526, 527 (11th Cir. 2009) (quotation omitted).

In order to allege a claim for violation of Plaintiff's right to procedural due process by a university administrator such as Dean Verduin, Plaintiff must allege facts permitting a plausible inference that (1) Verduin deprived him of a property right without reasonable notice and an opportunity to be heard; and (2) before initiating this action, Plaintiff exhausted the processes available to him at UCF.

(a) *Reasonable Notice and Opportunity to be Heard*

"There are no hard and fast rules by which to measure meaningful notice." *Nash*, 812 F.2d at 661. "An elementary and fundamental requirement of due process . . . is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id*. (citations omitted). Due process requires, in connection with the possible discipline of a student, "that the student be given oral or written notice of the charges against him and, if he denies them, an explanation of the evidence the

---

[15] The Eleventh Circuit's *Nash* opinion, affirming judgment for the university in claims brought by expelled graduate students challenging notice of their hearing, relies extensively on the case cited by Plaintiff in his Response, *Goss v. Lopez*, 419 U.S. 565 (1975). (*See* Doc. 26 at 8, 14).

authorities have and an opportunity to present his side of the story." *Univ. of Missouri v. Horowitz*, 435 U.S. 78, 85 (1978). "The due process clause is not a "shield . . . from suspensions properly imposed," nor does it ensure that the academic disciplinary process is a totally accurate, unerring process; it merely guards against the risk of unfair suspension if that may be done without prohibitive cost or interference with the educational process." *Nash*, 812 F.2d at 660-61 (internal citations and quotations omitted).

Defendants[16] argue that this standard was satisfied in Plaintiff's case by an "'informal give-and-take' between the student and the administrative body dismissing him that would, at least, give the student the opportunity to characterize his conduct and put it in what he deems the proper context," for the "very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation." (Doc. 22 at 11). In this case, Defendants argue, Plaintiff was provided with due process and received notice of the claim of academic misconduct against him, participated in the informal investigation, and during the meeting with the SPCC, he was permitted to try to explain his behavior during the Exam. Defendants further argue that Plaintiff was provided sufficient due process

---

[16] Defendants' combined brief makes this argument, although—based on the allegations in the Amended Complaint—Dean Verduin was not involved in the SPCC's initial hearing or in the initial accusation by the proctors, and it is not clear she would have been involved with the Honor Hearing scheduled for March 13, 2020. According to the facts as currently stated in the Amended Complaint, Verduin's only involvement in the disciplinary process was in denying Plaintiff's request for an "informal hearing" on March 12, 2020, the day he withdrew from UCF. (Doc. 20 ¶ 46).

during the informal investigation, and UCF could have made a final decision regarding the disciplinary action at the conclusion of the SPCC hearing, but UCF provided an additional level of due process to Plaintiff by scheduling the formal Honor Hearing for March 13, 2020.

Plaintiff argues that the scheduled Honor Hearing would have been "constitutionally inadequate" because he received the ExamSoft documents just four days prior to the planned March 6 hearing in "a substantially unusable format on printout paper" and he was denied a meaningful opportunity to respond since the ExamSoft results would clearly "need timely analysis by an IT specialist." (Doc. 26 at 8-9). He argues that he was not provided adequate notice of the contents of the data and the testimony regarding the incident utilized by the SPCC (which he describes as the "hearing board"). (*Id.*).

In reality, Plaintiff had notice of the proctors' accusations soon after the Exam and at least six weeks before the formal Honor hearing was scheduled to take place in mid-March. The Amended Complaint alleges that two proctors accused Plaintiff of academic misconduct following the January 27, 2020 Exam, and Dean of Students Kibble notified him on February 19, 2020 of the accusation of the Honor Code violation from the Exam. He took part in the SPCC's "initial hearing" on February 21, 2020 and learned on February 25, 2020 that the formal hearing was scheduled for two weeks after the SPCC, on March 6, 2020. As UCF points out, when Plaintiff requested the ExamSoft data, he was granted a one-week extension to have the data

examined by a third-party, as alleged in the Amended Complaint. However, instead of pursuing the administrative review process, Plaintiff decided to withdraw before the rescheduled formal Honor Hearing set for March 13, 2020.

Courts have found that even informal notice of the basis for academic discipline is sufficient. *See Castle v. Marquardt*, 632 F. Supp. 2d 1317, 1318 (N.D. Ga. 2009) (finding that "a verbal statement of the charges" was sufficient notice in "the context of post-graduate education" disciplinary proceedings). Courts have also determined that notice even just two days in advance complies with constitutional due process in the context of student disciplinary proceedings. *See Nash,* 812 F.2d at 661-63 (rejecting plaintiffs' allegations that timing and substance of notice deprived them of reasonable notice of academic dishonesty charges because notice four days in advance of scheduled hearing, and one day in advance of rescheduled hearing sufficed, and accused students had not requested an extension).

Most significant to the claim against the *only individual* currently named as a Defendant, Dean Verduin, Plaintiff does not assert that Verduin's denial of his request for an "informal hearing" violated his right to *procedural* due process. He cites no authority that requires a mandatory "informal" hearing in order to comply with procedural due process when a *formal* hearing is scheduled and afforded to a student as part of the disciplinary process. Nor, in light of Plaintiff's allegations that SPCC had already held its "initial hearing" (Doc. 20 ¶ 31) and UCF administrators had scheduled a subsequent *"formal"* Honor Hearing, would Verduin's denial of his

request for an additional "informal hearing" violate procedural due process. Moreover, Plaintiff ultimately chose not to attend by withdrawing from UCF before the rescheduled date of the Honor Hearing.

*(b) Exhaustion of Remedies*

As Dean Verduin points out, Plaintiff has not alleged that he exhausted the processes available to him at UCF. (Doc. 22 at 12). Plaintiff's only response to this argument is the single sentence that he was not required to seek "available state court relief." (Doc. 26 at 14). Plaintiff ignores precedent from the Middle District directly on point.

"A plaintiff cannot assert a claim for a violation of procedural due process 'unless and until the State fails to provide due process. In other words, the state may cure a procedural deprivation by providing a later procedural remedy; only when the state refuses to provide a process sufficient to remedy the procedural deprivation does a constitutional violation . . . arise.'" *See Doe v. Univ. of S. Fla. Bd. of Trs.*, No. 8:15-cv-682-T-30EAJ, 2015 WL 3453753, at *3 (M.D. Fla. May 29, 2015) (quoting *McKinney v. Pate*, 20 F.3d 1550, 1557 (11th Cir. 1994)).

In this case, UCF argues that the applicable section of the Honor Code (although not in the record) outlines an appeal process including a formal hearing and judicial review via a writ of certiorari to the state circuit court. *See* Fla. R. App. P. 9.100(c) and 9.190(b)(3) (providing for certiorari review of quasi-judicial actions of state agencies, boards, and commissions). (Doc. 22 at 10, 13).

Plaintiff has not alleged that he sought an appeal through this process. Instead, he alleges that he *withdrew* from UCF before the formal Honor Hearing was scheduled to take place. Plaintiff has failed to state a claim for relief for violation of procedural due process because he failed to exhaust his remedies, choosing to withdraw from UCF rather than attend the hearing. *See Doe*, 2015 WL 3453753, at *3 (dismissing procedural due process claim where student did not "allege that he sought an appeal" of defendant's adverse disciplinary decision); *see also Sarver*, 344 F. App'x at 529 (affirming dismissal of due process claim where plaintiff failed to appear at any scheduled meetings to address the violations with which she was charged); *Mancini v. Rollins Coll.*, No. 6:16-CV-2232-ORL-37KRS, 2017 WL 3088102, at *8 (M.D. Fla. July 20, 2017) (requiring student to replead where complaint provided insufficient factual allegations to support plausible inference he had exhausted all remedies afforded by college).

Accordingly, to the extent Plaintiff asserts a claim for violation of procedural due process by Verduin, it is dismissed.

### 2. Substantive Due Process Violation under § 1983

Verduin argues that Plaintiff has not sufficiently alleged a substantive due process claim against her in Count II because his Amended Complaint fails to allege a recognized protected property or liberty interest in his academic degree. Plaintiff argues that he has a constitutionally protected property right in his degree and a liberty interest in his academic reputation, but he admits that the law in this area

regarding expelled university students is unsettled—even though he devotes most of his argument on this claim to this issue. Verduin acknowledges that some courts have assumed for the sake of argument that college students have a property or liberty interest in their continued enrollment, but she argues that the United States Supreme Court, the Eleventh Circuit, and the Florida Supreme Court have never concluded that a protected property interest exists in a student's post-secondary education at a public college." (Doc. 22 at 8 (citing cases)); *but see Doe v. Cummins*, 662 F. App'x 437, 452 (6th Cir. 2016) (noting that suspension from college "clearly implicates a property interest").

Verduin argues that, assuming Plaintiff could assert that he has a property or liberty interest and meet the first element of a substantive due process claim,[17] Plaintiff's Amended Complaint clearly fails to allege that Verduin violated his substantive due process rights by acting in an arbitrary and capricious manner, by failing to have a rational basis for her actions, or by being motivated by malice or ill-will. (Doc. 22 at 8).

Dean Verduin argues that substantial deference should be accorded to university faculty's academic decisions in keeping with the Supreme Court's decision in *Regents of the University of Michigan v. Ewing*, 474 U.S. 214 (1985):

---

[17] Verduin mentions in passing in a footnote the defense of "qualified immunity," (Doc. 22 at 8 n.3) but does not fully address it. The Court need not address the issue at this juncture. Verduin is not precluded from raising it with the appropriate memorandum of law and citations to authority in a future motion.

> When judges are asked to review the substance of a genuinely academic decision, . . . they should show great respect for the faculty's professional judgment. Plainly, they may not override it unless it is such a substantial departure from accepted academic norms as to demonstrate that the person or committee responsible did not actually exercise professional judgment.

*Id.* at 223. Dean Verduin argues that the Amended Complaint does not allege "any fact from which it might be concluded that her rejection of his request for an 'informal resolution' was a 'substantial departure from academic norms' as required by the Supreme Court in *Ewing."* (Doc. 22 at 9). Verduin argues that Plaintiff has not alleged that she personally had any role in the ongoing disciplinary proceedings or that she even had the authority to provide him with an "informal hearing" under the Honor Code.[18]

Although Plaintiff spends several pages of his Response discussing the issue of whether he has a liberty interest and/or property interest in his academic program, he only vaguely responds to Verduin's other arguments on substantive due process. In Response to the Motion to Dismiss, Plaintiff argues—though he did not specifically allege it in the Amended Complaint—that Verduin's actions and "decision to charge Plaintiff with a detrimental integrity violation" was "based on improper motive, *i.e.*, personal vendetta, bias and/or prejudice, not on academic grounds" and she "did not exercise professional judgment in denying Plaintiff the required due process and ultimately his degree." (Doc. 26 at 8). He further argues

---

[18] Although Verduin discusses the Honor Code Section 3.1.4.2, it is not in the record.

that Verduin "impermissibly would not allow" him an informal disciplinary hearing; and all of these actions "violated Plaintiff's substantive due process right to be free from arbitrary state action." (Doc. 26 at 8). However, Plaintiff fails to allege any facts whatsoever in support of these allegations that are asserted in his Response.[19] Plaintiff's substantive due process claim against Verduin will be dismissed with leave to amend.

## CONCLUSION

Based on the foregoing, it is ordered as follows:

1.      Defendant's Motion to Dismiss the Amended Complaint is **GRANTED** as follows:

    a.   Plaintiff's claim in Count I of the Amended Complaint (Doc. 20) asserted against UCF is dismissed for lack of jurisdiction under Rule 12(b)(1) due to Eleventh Amendment immunity;

    b.   Plaintiff's claim in Count III of the Amended Complaint for violation of Title VI, to the extent it is asserted against UCF, is dismissed with leave to amend;

    c.   Plaintiff's claim in Count III of the Amended Complaint, to the extent it was asserted against Dean Verduin, is dismissed without leave to amend

---

[19] Plaintiff has not alleged that Verduin personally discriminated against him on the basis of national origin. Verduin was not on the SPCC where Plaintiff allegedly made statements about "Eastern European culture."

based on Plaintiff's concession that he cannot sue an individual for violation of Title VI of the Civil Rights Act of 1964;

d. Plaintiff's claim in Count II of the Amended Complaint against Dean Verduin for alleged violation of his procedural due process rights is dismissed without leave to amend;

e. Plaintiff's claim in Count II of the Amended Complaint against Dean Verduin for alleged violation of his substantive due process rights is dismissed with leave to amend.

2. Plaintiff is granted leave to file a second amended complaint within 14 days to amend the allegations of:

a. Count II to assert a § 1983 claim against Defendant Marcy Verduin ONLY for alleged violation of Plaintiff's substantive due process rights to the extent that he can state a claim against her in her individual capacity; and

b. Count III to assert a Title VI claim against UCF for national origin discrimination consistent with the case law discussed above.

3. Defendants are granted leave to file a motion to dismiss within 14 days of the filing of Plaintiff's second amended complaint based on the substance of any claim alleged in the second amended complaint, including the issue of qualified immunity, as appropriate.

**DONE** and **ORDERED** in Chambers, in Orlando, Florida on June 14, 2023.

ANNE C. CONWAY
United States District Judge

Copies furnished to:

Counsel of Record